IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOYCE FRACHISEUR                                                                            PLAINTIFF

v.                                            Case No. 2:15-CV-02027

GRAPHIC PACKAGING INTERNATIONAL, INC.                              DEFENDANT

## OPINION AND ORDER

Before the Court are Defendant Graphic Packaging International, Inc.'s ("GPI") motion for summary judgment (Doc. 27), Plaintiff Joyce Frachiseur's response, GPI's reply, and the parties' supporting documents. For the following reasons, the Court finds that GPI's motion for summary judgment (Doc. 27) should be GRANTED, and Frachiseur's amended complaint DISMISSED WITH PREJUDICE.

**I.      Background**

Frachiseur began employment with GPI in 1983.  By 2003, Frachiseur had risen to the rank of Gluer Operator, a position she would fill until her termination.[1]  Beginning at least as early as 2008, Frachiseur was subject to disciplinary actions on multiple occasions.  On July 28, 2008, Frachiseur received a verbal warning for attendance issues.  On January 23, 2009, Frachiseur received a written warning for setting up her work equipment wrong and causing a production error.  On June 8, 2010, Frachiseur received a written warning for attendance issues.  On August 23, 2010, Frachiseur received a written warning for deficiencies in her work performance.  On June 7, 2011, Frachiseur was temporarily suspended for a policy breach and unsatisfactory performance or quality.

---

[1] At some point in time, Frachiseur was promoted to Gluer Operator Lead Person, but was later demoted to Gluer Operator.

In or around May 2012, Frachiseur was diagnosed with breast cancer, which resulted in her taking FMLA leave to seek cancer treatment. Frachiseur returned to work in January 2013, but was required to maintain a chemotherapy medication port—a type of catheter that protrudes from the skin and is used to delivery chemotherapy treatment. In the weeks and months following her return to work, Frachiseur continued to receive disciplinary actions. On February 15, 2013, Frachiseur received a verbal warning for unsatisfactory performance for failing to properly verify a work order, resulting in a "label mix"—meaning that the label on a carton did not match what was eventually to be stored in the carton. On May 11, 2013, Frachiseur received a written warning for again making a mistake that led to a label mix. On August 4, 2013, Frachiseur was suspended for one day for failing to sign in on her work machine's Daily Management Board. In August 2013, Frachiseur received an unsatisfactory performance evaluation. On October 20, 2013, Frachiseur was suspended for three days for continued performance issues. After each of these instances, Frachiseur was warned that continued performance problems would result in further discipline up to and including termination. Finally, on December 9, 2013, Frachiseur's production fell well short of her minimum requirements, when she produced 57,000 out of 125,000 cartons. Frachiseur was moved to another machine in an attempt to address the issue, but due to her purported miscommunications with a co-worker she caused another label mix. As a result, GPI terminated Frachiseur's employment effective December 13, 2013, pursuant to GPI's progressive disciplinary process.

On June 10, 2014, Frachiseur filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that she had been discriminated or retaliated against based on her age, gender, and/or disability. (Doc. 1-1). On November 12, 2014, the EEOC issued Frachiseur a "Right to Sue" letter for her claims, which provided that Frachiseur had the right to file a lawsuit

based on the allegations in her EEOC charge within 90 days. (Doc. 1-2). On February 10, 2015, Frachiseur filed the instant action, wherein she set forth claims for: (1) wrongful termination based on gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII"); (2) wrongful discharge based on age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* ("ADEA"); (3) discrimination based on her disability of breast cancer and cancer treatment under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.* ("ADA"); (4) discrimination based on her gender and/or disability under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 *et. seq.* ("ACRA"); and (5) discriminatory retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2) ("FMLA").

## II.    Legal Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In order to grant summary judgment, the evidence must be such that no reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Therefore, the moving party must demonstrate the absence of genuine issues of material fact to be resolved. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the Court must resolve all controversies in favor of the non-moving party, take the non-moving party's evidence as true, and draw all justifiable inferences in favor of that party. *Matsushita Elect. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, in opposing a motion for summary judgment, the non-moving party may not rest on allegations or denials in its pleadings but must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. These specific

facts showing a genuine issue for trial are to be established by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).  Ultimately, "[w]hile employment discrimination cases are often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment, and there is no separate summary judgment standard for employment discrimination cases." *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010) (rejecting prior assertions that summary judgment should rarely be granted in employment discrimination cases).  It is the non-moving party's burden to identify for the Court evidence supporting its case.  "[A] lawsuit is not a game of hunt the peanut.  Employment discrimination cases are extremely fact-intensive, and neither appellate nor district courts are obliged in our adversary system to scour the record looking for factual disputes . . . ." *Greer v. Bd. of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) (citation and internal quotations omitted); *see also Rogers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006) ("[W]e will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments.").

**III.    Analysis**

    **A.    Timeliness of Claims**

Frachiseur's complaint sets out causes of action under Title VII, the ADA, the ADEA, the ACRA, and the FMLA premised on various employment actions taken against Frachiseur in the year leading up to her termination on December 13, 2013.  GPI argues that each of Plaintiff's claims premised on acts occurring before December 13, 2013 are time-barred.  Specifically, GPI points out that because Frachiseur filed her charged of discrimination on June 10, 2014, the applicable 180-day limitations period extends back only to December 12, 2013.  According to the facts alleged, this leaves only claims premised on Frachiseur's termination as timely.  *See* 42

U.S.C. §§ 2000e-5(e)(1) (establishing 180-day limitations period for Title VII claims); 29 U.S.C. § 626(d)(1) (establishing 180-day limitations period for ADEA claims); 42 U.S.C. § 12117(a) (providing that the ADA adopts the Title VII requirements regarding 180 day limitations period); Ark. Code Ann. § 16-123-107(c)(3) (establishing limitations period for an ACRA claim of either one year after the alleged discrimination or within 90 days of receiving a "Right to Sue" letter from the EEOC, whichever is later).

Frachiseur argues that all of the instances of alleged discrimination should be considered timely based on the continuing violations doctrine. "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). However, under the continuing violations doctrine, "so long as one act occurs within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Specifically, Frachiseur argues that she was targeted by a "series of pre-planned disciplinary acts designed as a single scheme to unlawfully terminate [her,]" such that Frachiseur's termination was simply the last discriminatory act of a continuing violation.

Other than broad allegations that GPI pre-planned its disciplinary actions against Frachiseur and general disagreement with progressive disciplinary policies, Frachiseur provides no evidence for the Court, or any reasonable juror for that matter, to conclude that the disciplinary actions taken against Frachiseur were part of any unlawful scheme. Rather, GPI articulated the specific legitimate reasons for each disciplinary action taken against Frachiseur. Frachiseur has provided no evidence to discredit the reasoning for any instance of discipline imposed on her—

only general disagreement, without any alternative rationale, as to why she was disciplined. The fact that Frachiseur was subject to discipline on multiple occasions, and sometimes for the same reasons, is not sufficient on its face for the Court to find a genuine issue of material fact regarding the existence of a continuing violation. For those reasons, the Court finds that any claim premised on an act occurring prior to December 12, 2013 is time-barred. Accordingly, Frachiseur's claims under the ADA (Count III) and ACRA (Count IV) are DISMISSED WITH PREJUDICE.

### B. Termination-Based Claims: Title VII, ADEA, and FMLA Retaliation

When, as here, a plaintiff presents no direct evidence to support a claim of retaliatory discrimination under either Title VII, the ADEA, or the FMLA, each respective claim is analyzed under the burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012) (applying *McDonnell Douglas* to a Title VII retaliation claim); *Tunsing v. Des Moines Independent Community School Dist.*, 639 F.3d 507, 515 (8th Cir. 2011) (applying *McDonnell Douglas* to an AEDA claim); *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008) (applying *McDonnell Douglas* to an FMLA retaliation claim). Under this framework, the plaintiff must first present a prima facie case of Title VII, ADEA, or FMLA retaliation. *Id.* Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.*; *McDonnell Douglas Corp.*, 411 U.S. at 802. The plaintiff must then demonstrate that the defendant's proffered reason is a pretext for unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08 (1993); *Miners v. Cargill Comms., Inc.*, 113 F.3d 820, 823 (8th Cir. 1997). To demonstrate pretext, the plaintiff must offer sufficient evidence for a reasonable trier of fact to infer discrimination. *Lors v. Dean,* 595 F.3d 831, 834 (8th Cir. 2010). Specifically, "[a] plaintiff may show pretext, among other ways, by showing that an

employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Gibson*, 670 F.3d at 854. The Eighth Circuit has also provided that there are "at least two routes for demonstrating a material question of fact as to pretext. First a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact. Second, a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer." *Id.* (citations and internal quotations omitted). "[T]he evidence produced to show a prima facie case and the 'inferences drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual.'" *Miners*, 113 F.3d at 823 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10 (1981).

Assuming that Frachiseur could establish a prima facie case of employment discrimination under any of her three remaining theories, the Court finds that Frachiseur has not presented sufficient evidence to demonstrate or even give rise to a favorable inference that GPI's actions were a pretext for discrimination. GPI provided a legitimate non-discriminatory reason for Frachiseur's termination—that Frachiseur was terminated following a series of progressive disciplinary actions concerning primarily performance-related issues. Frachiseur's arguments against that reason, however, consist of (1) describing the series of disciplinary actions taken against her as "highly unusual"; (2) pointing out the temporal proximity between her return from FMLA leave and discipline, including termination; and (3) general disagreement with GPI's reason for her termination and general disapproval of progressive discipline policies. Essentially, Frachiseur is hoping the Court will make an inference of discrimination based solely upon Frachiseur's characterization of the circumstances rather than any actual evidence supporting her position or rebutting GPI's. The Court declines to do so. Next, the temporal proximity between

7

Frachiseur's return from FMLA leave and termination is approximately one year. Even if that were sufficient to establish the causation element of Frachiseur's FMLA retaliation claim, it is insufficient to rebut GPI's proffered reason for Frachiseur's termination—especially considering GPI's thorough, legitimate rationale behind each instance of disciplinary action taken against Frachiseur leading up to her termination. Finally, Frachiseur's disagreement with GPI's rationale or disciplinary policy provide the Court with nothing of value in ruling on the instant motion. Because Frachiseur presented no evidence from which a jury could possibly conclude that GPI's proffered legitimate reason for her termination was pretextual, and because that legitimate reason for Frachiseur's termination is applicable to Frachiseur's claims under Title VII, the ADEA, and the FMLA, the Court finds that each of those claims should be DISMISSED WITH PREJUDICE.

## IV.   Conclusion

IT IS THEREFORE ORDERED that GPI's motion for summary judgment (Doc. 27) is GRANTED and Frachiseur's amended complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this 5th day of July, 2016.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE